IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

APR 1 7 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ROBERT D. STRAUS, JR., | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Civil Action No. H-04-4625 |
| | § | |
| DVC WORLDWIDE, INC. d/b/a DVC; | § | |
| SMITHKLINE BEECHAM | § | Court Unit of Judge Rosenthal |
| CORPORATION d/b/a | § | |
| GLAXOSMITHKLINE, | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH RESPECT TO STRAUS' CLAIM THAT AN IMAGE OF ARNOLD PALMER
TAKEN BY A PHOTOGRAPHER NAMED MARC HAUSER, WITH CERTAIN
MODIFICATIONS MADE THERETO YEARS LATER BY GSK, IS A
DERIVATIVE WORK OF STRAUS' PHOTOGRAPH**

J. Clark Martin
Attorney-in-Charge
State Bar No. 13090000
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
Phone: 713-758-2490
Facsimile: 713-615-5248

Of Counsel for GSK:
Pasquale A. Razzano
Tim Kely
Tila M. Duhaime
FITZPATRICK, CELLA, HARPER
 & SCINTO
30 Rockefeller Plaza
New York, New York 10112
212-218-2100

ATTORNEYS FOR DEFENDANT

Of Counsel for DVC:
Christina M. Tchen
Amy Gardner
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
312-407-0700

TABLE OF CONTENTS:

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Material at Tabs: Summary Judgment Evidence presented by the Defendants . . . . . . . . . . . . . iii

Statement of the Nature and Stage of the Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Issues to be Ruled on and Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viiii

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

1.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.    The facts conclusively established by the summary judgment evidence . . . . . . . . . . . . . 3

      a.    The 1995 Hauser photograph of Mr. Palmer is not an infringing work . . . . . . . . 4

      b.    The minor modifications that GSK made in 2001 to the 1995 Hauser
            photograph were made for aesthetic reasons and did not convert that non-
            infringing work into an infringing work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      c.    Other portrait photographs of Mr. Palmer that GSK used . . . . . . . . . . . . . . . . . . 10

3.    Summary judgment is appropriate as to the issue addressed by this Motion for Partial
      Summary Judgment No. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4.    Applicable law, applied to the facts of this dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5.    Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES:

Decisions:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir.), *cert. denied*, 513 U.S. 1062, 115 S.Ct. 675 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Beck v. Somerset Technologies, Inc.*, 882 F.2d 993 (5th Cir. 1989) . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Creations Unlimited, Inc. v. McCain*, 112 F.3d 814 (5th Cir. 1997) . . . . . . . . . . . . . . . 15

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) . . . . . . . . 17

*Ferguson v. National Broadcasting Co.*, 584 F.2d 111 (5th Cir. 1978) . . . . . . . . . . . . . 15

*Harper & Row, Publishers, Inc. v. Nation Enters*, 471 U.S. 539 (1985) . . . . . . . . . . . . 18

*Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458 (5th Cir. 1990) . . . 18

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527 (5th Cir. 1994) . . . . 17, 19

*Mason v. Montgomery Data, Inc.*, 967 F.2d 135 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . 18

*Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231 (2d Cir. 1983) . . . . . 15

Statutes:

17 U.S.C. § 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17 U.S.C. § 103(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rules of Civil Procedure:

FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Treatises:

NIMMER § 13.03[B][2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IDENTIFICATION OF MATERIALS AT TABS:

Summary judgment evidence presented by the Defendants:

Exhibit A:    1989 photograph of Arnold Palmer taken by the Plaintiff Straus.

Exhibit B:    1995 photograph of Arnold Palmer taken by Marc Hauser and provided to DVC and GSK by Arnold Palmer Enterprises.

Exhibit C:    The composite of three photographs put together by the Plaintiff Straus and produced by him in this lawsuit as RS0218. The 1995 photograph of Arnold Palmer taken by Marc Hauser and provided to DVC and GSK by Arnold Palmer Enterprises is on the far left (in the original Hauser photograph, Mr. Palmer was facing to the viewer's left; here the image has been flipped so that Mr. Palmer is facing to the viewer's right). The 1989 photograph of Arnold Palmer taken by the Plaintiff Straus is on the far right, (the original Straus image showed Mr. Palmer facing to the viewer's left, and this image has been flipped over so that Mr. Palmer is facing to the viewer's right). The 1995 photograph of Arnold Palmer taken by Marc Hauser with minor modifications made thereto in 2001 by GSK is in the middle (this image too has been flipped over so that Mr. Palmer is facing to the viewer's right).

Exhibit D:    1995 photograph of Arnold Palmer taken by Marc Hauser with minor modifications made thereto by GSK in 2001.

Exhibit E:    Photograph of Arnold Palmer taken by Gary Kufner used by GSK in its cease-smoking campaign.

Exhibit F:    Photograph of Arnold Palmer taken by Gary Kufner used by GSK in its cease-smoking campaign..

Exhibit G:    Photograph of Arnold Palmer taken by Allan Hunter Shoemake used by GSK in its cease-smoking campaign.

Exhibit H:    Photograph of Arnold Palmer taken by Allan Hunter Shoemake used by GSK in its cease-smoking campaign.

Exhibit I:    Photograph of Arnold Palmer taken by Allan Hunter Shoemake used by GSK in its cease-smoking campaign.

Exhibit J:    Photograph of Arnold Palmer taken by Allan Hunter Shoemake used by GSK in its cease-smoking campaign.

Exhibit K:    Photograph of Arnold Palmer taken by Allan Hunter Shoemake used by GSK in its cease-smoking campaign.

Exhibit L:    Excerpts from the deposition of the Plaintiff Straus.

Exhibit M    Declaration of Marc Hauser. Hauser authenticates the photograph of Arnold Palmer that he took on or about July 7, 1995 in Arnold Palmer's office.

Exhibit N:    Declaration of Valerie White of DVC. White authenticates numerous of the photographs of Arnold Palmer that she reviewed and/or commissioned in connection with DVC services to GSK with respect to GSK's cease-smoking campaign, namely:

| | |
|---|---|
| Exhibit 1 to White's Declaration: | The 1995 Hauser photograph |
| Exhibit 2 to White's Declaration: | The 1989 Straus photograph |
| Exhibit 3 to White's Declaration: | The modified 1995 Hauser photograph |
| Exhibit 4 to White's Declaration: | Photograph of Arnold Palmer that came from Allsports Photography |
| Exhibit 5 to White's Declaration: | Photograph of Arnold Palmer taken by Gary Kufner |
| Exhibit 6 to White's Declaration: | Photograph of Arnold Palmer taken by Gary Kufner |
| Exhibit 7 to White's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 8 to White's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 9 to White's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 10 to White's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 11 to White's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |

Exhibit O:    Declaration of Steve Kapur of GSK. Kapur authenticates numerous of the photographs of Arnold Palmer that GSK used in connection with GSK's cease-smoking campaign, namely:

| | |
|---|---|
| Exhibit 1 to Kapur's Declaration: | The 1995 Hauser photograph |
| Exhibit 2 to Kapur's Declaration: | Photograph of Arnold Palmer that came from Allsports Photography |
| Exhibit 3 to Kapur's Declaration: | The 1989 Straus photograph |
| Exhibit 4 to Kapur's Declaration: | The modified 1995 Hauser photograph |
| Exhibit 5 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Gary Kufner |
| Exhibit 6 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Gary Kufner |
| Exhibit 7 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 8 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |

| Exhibit 9 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 10 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |
| Exhibit 11 to Kapur's Declaration: | Photograph of Arnold Palmer taken by Allan Hunter Shoemake |

Exhibit P:     Declaration of Prof. Jeff Sedlik, a photography expert retained by DVC and GSK.

Exhibit Q:     Declaration of Jim Pickerell, a photography expert retained by DVC and GSK.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING:

This is a copyright infringement action. Interrogatories and requests for production have been served and responded to by both the Plaintiff and the Defendants. The Defendants have taken the deposition of the Plaintiff Straus. The Plaintiff has taken the Rule 30(b)(6) deposition of DVC through its designated representative, Valerie White, and the Rule 30(b)(6) deposition of GSK through its designated representative, Steve Kapur. The Plaintiff has served an expert report of Jane Kinne. The Defendants have served expert reports of Prof. Jeff Sedlik, Jim Pickerell, and Karyl Van Tassel. Mediation is set for April 24, 2006. The depositions of the experts, if any are actually needed in light of the nature of their reports, have been delayed until after the Mediation.

ISSUES TO BE RULED ON BY THE COURT AND A SHORT STATEMENT, SUPPORTED BY AUTHORITY, OF THE STANDARD OF REVIEW FOR EACH ISSUE:

1.  Does an image of Arnold Palmer shot indoors in 1995 by a photographer named Marc Hauser infringe Straus' copyright in his earlier 1989 outdoor photograph of Arnold Palmer?

2.  If the answer to the first issue is no, did certain minor modifications made by GSK in 2001 to the non-infringing 1995 Hauser image convert that non-infringing work into a work that infringes Straus' copyright in his 1989 outdoor photograph of Arnold Palmer?

    The standard of review with respect to a grant of summary judgment is *de novo*. *See, e.g., Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), and *Carpenters Dist. Council v. Dillard Dep't Stores*, 15 F.3d 1275, 1281 (5th Cir. 1994).

## SUMMARY OF THE ARGUMENT:

As to Issue No. 1:

Straus took his photograph of Arnold Palmer outdoors in Jamaica in 1989. Several years later, Marc Hauser independently took his 1995 photograph of Arnold Palmer in Palmer's office. Hauser transferred his rights to Eveready Batteries. Arnold Palmer Enterprises obtained such rights and provided the image to DVC for use by GSK, without charge and without limitations. Hauser did not copy Straus' 1989 photograph of Palmer. Hauser did not have access to Straus' 1989 photograph of Palmer. Indeed, Hauser at that time had never even heard of Straus or seen his 1989 photograph of Palmer. Those facts end the dispute as to whether Hauser's 1995 image of Palmer is a reproduction or derivative work of Straus' copyrighted 1989 photograph of Palmer. Independent creation of a photograph of Arnold Palmer cannot be infringement of a the copyright in a prior photograph of Palmer.

However, even if Hauser had had access to Straus' 1989 image of Palmer, Hauser's 1995 image of Palmer does not infringe because the protected elements of the Hauser photograph are not *substantially similar* to the protected elements of the Straus' photograph. Indeed, Straus himself, designated by his counsel as an expert, testified under oath that the two photographs are not *substantially similar* and that, therefore, Hauser's 1995 image of Palmer is not a derivative of Straus' 1989 image of Palmer. The Defendants show the Court herein the ideas, *scenes a faire*, and expressions-merged-into-ideas that must be eliminated from the copyright infringement analysis. The Defendants show the Court that with respect to what remains, there are eleven significant distinctions between the two photographs that render them not *substantially similar*.

As to Issue No. 2:

GSK made minor modifications to Hauser's 1995 image of Palmer. For aesthetic reasons, GSK darkened the color of Palmer's shirt, lightened the color of his collar, and smoothed out the texture of his skin. It is standard practice for photographs to be modified to best suit the purposes of the advertisements in which they will be used. Straus had no exclusive right to photograph Palmer in a dark shirt and light collar, as the wardrobe of a subject like Palmer constitutes a *scenes a faire*. GSK did not modify any of the eleven significant distinctions that caused the 1995 Hauser photograph to not be *substantially similar* to Straus' 1989 photograph in the first place. GSK's minor modifications to the 1995 Hauser photograph did not convert that non-infringing work into an infringing work.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States **Courts**
Southern District **of Texas**
FILED

APR 1 7 2006

Michael N. Milby, **Clerk**

| | | |
|---|---|---|
| ROBERT D. STRAUS, JR., | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Civil Action No. H-04-4625 |
| | § | |
| DVC WORLDWIDE, INC. d/b/a DVC; | § | |
| SMITHKLINE BEECHAM | § | Court Unit of Judge Rosenthal |
| CORPORATION d/b/a | § | |
| GLAXOSMITHKLINE, | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH RESPECT TO STRAUS' CLAIM THAT AN IMAGE OF ARNOLD PALMER
TAKEN BY A PHOTOGRAPHER NAMED MARC HAUSER, WITH CERTAIN
MODIFICATIONS MADE THERETO YEARS LATER BY GSK, IS A
DERIVATIVE WORK OF STRAUS' PHOTOGRAPH**

COME NOW the Defendants DVC Worldwide, Inc. d/b/a DVC ("DVC") and Smithkline

Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and respectfully present their Motion for

Partial Summary Judgment with respect to the claim of the Plaintiff Robert D. Straus ("Straus") that

an image of Arnold Palmer taken in 1995 by a photographer named Marc Hauser ("Hauser"), with

certain modifications made thereto years later in 2001 by GSK, is a "derivative work" of Straus'

photograph of Arnold Palmer taken in 1989 – and thereby an act of copyright infringement. This

Motion is referred to as Motion for Partial Summary Judgment No. 1. The Defendants respectfully

show the Court as follows:

**1.      Introduction:**

This Motion for Partial Summary Judgment No. 1 presents the following issues: Does an

image of Arnold Palmer shot indoors in an office in 1995 by Hauser infringe Straus' copyright in a

photograph of Arnold Palmer shot outdoors in Jamaica in 1989? If not, the issue becomes whether

certain minor modifications made to the Hauser image years later in 2001 by GSK converted the

non-infringing work into an infringing work, *i.e.*, to use Straus' words, a "derivative work" of Straus' 1989 photograph of Mr. Palmer.

Straus granted a limited license to GSK to use his 1989 photograph of Mr. Palmer in connection with Mr. Palmer's endorsement of GSK's smoking-cessation program. Straus has filed suit against DVC and GSK alleging infringement of Straus' copyright in his 1989 photograph of Mr. Palmer in four respects. The first three of Straus' claims are as follows: [1] Straus claims that GSK used his 1989 photograph of Mr. Palmer in a snippet in one unlicensed TV ad that was aired for a short period of time from December 24, 2001 and in the first quarter of 2002; [2] Straus claims that GSK left one piece of advertising material bearing his 1989 photo of Mr. Palmer in an Eckerd Drugstore in Houston for a week or so in March 2002 that extended beyond the license period, which terminated at the end of February 2002; and [3] Straus claims that DVC used his 1989 photograph of Arnold Palmer for a short period of time in late 2004 to objectively demonstrate DVC's work. Those three claims are <u>not</u> the subject of this Motion for Summary Judgment No. 1.

Straus' fourth claim contends that an image of Arnold Palmer shot by Hauser indoors in 1995 that GSK used in connection with its smoking-cessation program infringes Straus' copyright in his earlier 1989 outdoor photograph of Arnold Palmer. If it does not, Straus contends that minor modifications made to the 1995 Hauser image by GSK resulted in a work that infringes Straus' copyright in his 1989 outdoor photograph of Arnold Palmer. It is these claims that are the subject of this Motion for Summary Judgment No. 1.[1]

---

[1]     The Defendants distinguish in this Motion between the positions of Straus and the positions of his counsel. Straus' counsel submitted an expert report by Jane Kinne in which she opined, based simply on looking at the two photographs and without ever even discussing the situation with Straus, or with Mr. Hauser, or with any representatives of GSK or DVC, that Mr. Hauser's 1995 photo had been "deliberately created" to be a derivative work. Straus' counsel has pursued time-consuming and expensive discovery with respect to the Hauser 1995 photograph of Arnold Palmer. However, by contrast, Straus himself has admitted under oath that the Hauser 1995 photograph of Arnold Palmer is not a "derivative work" of his (Straus) 1989 photograph of Arnold Palmer. Straus Depo., p. 174, line 9.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

The Defendants will shortly file another Motion for Partial Summary Judgment directed to the failure of the Plaintiff Straus to meet his burden of proof with respect to his claim that he is entitled to actual damages based on the revenues of the Defendants. Straus cannot establish the requisite casual connection between the Defendants' minimal use of his (Straus) 1989 photo of Mr. Palmer and the revenues the Defendants received from the conduct of their business.

DVC will shortly file a Motion for Partial Summary Judgment directed to its right to use copyrighted images, including Straus' 1989 image of Arnold Palmer, to objectively demonstrate to potential customers the nature of DVC's work.

**2.     The facts conclusively established by the summary judgment evidence:**

Steve Kapur ("Kapur") is the person responsible within GSK for marketing the stop smoking brands within GSK's consumer health care unit and managing the image that GSK's smoking-cessation program portrays. Decl. of Kapur, ¶ 2. Kapur explains that since 1996, GSK has marketed smoking-cessation products, including **NICORETTE** and **NICODERM**. In 2001, GSK's promotional marketing agency for its stop-smoking campaign was Catalyst Marketing. In the Fall of 2001, GSK entered into an agreement with Arnold Palmer for him to serve as the spokesperson for GSK's smoking-cessation program. GSK had little time to prepare the artwork in order to begin using Mr. Palmer in connection with advertisements that would commence in November of 2001. Because GSK did not have enough time to create new imagery of Mr. Palmer, Catalyst searched for stock photos of Mr. Palmer for GSK to use initially. Kapur wanted to make a strong connection between GSK's products and Mr. Palmer as a personality, so rather than use a full image of Mr. Palmer playing golf, Kapur wanted a portrait so that consumers could recognize Mr. Palmer's face and make the association with the product. Catalyst recommended that GSK use Straus' 1989 photo, a copy of which is attached hereto as Exhibit A. Kapur would have preferred another photo, one that was closer to Mr. Palmer's true age at the time, but Straus' photo was the best Kapur had available at the

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

time.  Kapur Decl., ¶ 3.

In the Fall of 2001, GSK decided to use the services of DVC Worldwide, Inc. d/b/a DVC ("DVC"), instead of Catalyst Marketing, as its promotional marketing agency for GSK's smoking-cessation program for the year 2002.  From almost the beginning of GSK's relationship with DVC, DVC's Art Buyer, Valerie White ("White"), recommended that GSK consider using images of Mr. Palmer other than the 1989 Straus image.  Kapur Decl., ¶ 4; White Decl., ¶ 3.

### a.    The 1995 Hauser photograph of Mr. Palmer is not an infringing work:

White established contact with Arnold Palmer Enterprises ("APE"), an organization that represents Mr. Palmer.  APE granted to DVC, for the benefit of GSK, the right to use the image of Mr. Palmer attached hereto as Exhibit B.  APE provided the image to GSK for use in connection with Mr. Palmer's sponsorship of GSK's smoking-cessation products – free and without any limitations.  Kapur analyzed the APE image and approved GSK using the image in connection with Mr. Palmer's sponsorship of GSK's smoking-cessation products.  Kapur Decl., ¶ 6; White Decl., ¶ 3, 4, 5.

The image of Mr. Palmer that was provided by APE was taken in 1995 by a photographer named Marc Hauser.  Hauser independently created the image, having no knowledge of Straus' 1989 photo.  Hauser transferred his rights to Eveready Batteries.  Hauser Declaration.  APE obtained its rights from Eveready Batteries and provided the image to DVC for use by GSK, without charge and without limitations.  White Decl. ¶ 4.

Straus himself, who has been designated as an expert in this area, admitted during his deposition that the Hauser 1995 photograph of Mr. Palmer that was provided by APE is <u>not</u> a "derivative work" of his (Straus) 1989 photograph of Mr. Palmer because it is <u>not</u> *substantially similar* to his 1989 photograph of Mr. Palmer.  (At the time, apparently Straus did not know that DVC and GSK had obtained the photograph from Mr. Palmer's own marketing organization.)

Referring to page 173 of his deposition, commencing at line 6, where Straus was questioned about the document he produced marked RS0218, a copy of which is attached hereto as Exhibit C:

Q.      Who -- who prepared this comparison?

A.      I did.

Q.      When did you do that?

A.      Recently.

Q.      And for what purpose?

A.      To show the various images that -- that are involved in this.

Q.      And the one on the left is what?

A.      That's the one that we referred to earlier that's on Metro West cover of the publication.

Q.      Is that an image that comes from Arnold Palmer Enterprises?

A.      I don't know.

Q.      And the one on the far right, what is that?

A.      That's my image.

Q.      And then the one in the middle?

A.      That was from a -- a product that was produced by Glaxo.

Q.      And do you know whether the one in the middle is based on the one on the far left?

A.      I don't know it.

Q.      Do you think so?

A.      I do believe it was, yes.

Q.      **And do you think the one on the far left is a derivative work of your image?**

A.      **No.**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

Q.      **Why not?**

A.      **Because it's -- <u>it's</u> <u>not</u> <u>similar</u>.  The clothing isn't similar.**

Q.      **Anything else?**

A.      **The pose is similar, but the clothing is not.  Lighting is similar.  But the lighting, of course, is artificial lighting.**

Q.      What difference does that make?

A.      Does make some difference, but not necessarily substantial.   It's more controllable.

Page 175, line 8:

Q.      Did you have any discussions with Mrs. Kinne about any of these issues?

A.      I have not.

Q.      Have you ever spoken to Mrs. Kinne?

A.      Yes.

Q.      And what did you say to her?

A.      Oh, I -- the last time I spoke to her was probably five years ago.

Q.      Oh, so you did not speak to her in connection with this lawsuit?

A.      I have not.

b.      **The minor modifications that GSK made in 2001 to the 1995 Hauser photograph were made for aesthetic reasons and did not convert that non-infringing work into an infringing work:**

GSK used the Hauser image as is (except GSK flipped the image to face the product) in connection with three advertising materials.  However, GSK noticed that the color of Mr. Palmer's golf shirt in the Hauser image was the color of blue that seemed to provide for a wide variation based on the printing process and based on the way it was reproduced, and sometimes it even appeared almost green.  Kapur Decl., ¶ 7.

Based on his unhappiness with the way the Hauser image appeared in the three initial

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

advertising materials, Kapur asked GSK's art department to make Mr. Palmer's shirt darker. Kapur also asked them to lighten his collar to provide separation between his sun-tanned face and the shirt. Kapur has explained that Mr. Palmer's skin tone is flattered by some of the icier pastel colors and particularly by dark colors. Kapur explained that darkening the color of the shirt also provided an image that looked better given the wide variation of backgrounds that would be used in various advertising materials and the different colors of type. Kapur Decl., ¶ 8.

GSK's art department made the changes to the Hauser image that Kapur requested, and, as it is standard procedure within GSK that they corrected the skin texture, they smoothed out Mr. Palmer's skin tones and balanced the color to get his face and skin to look the best they could. Kapur Decl., ¶ 9.

They brought the modified image back to Kapur for review. Kapur reviewed it and approved it, because he thought it was appropriate for GSK's application. A copy of the modified 1995 Hauser image of Mr. Palmer is attached hereto as Exhibit D. In requesting these changes to Mr. Palmer's golf shirt and collar, Kapur was not trying to copy any aspects of Mr. Straus' 1989 photo. As the Rule 30(b)(6) representative of GSK, Kapur inquired of everyone still working for GSK who was involved in the process of modifying the Hauser image whether, when they made these modifications to the Hauser image, they had referred to Straus' 1989 photo or attempted to copy any aspects of that image. They each informed Kapur that they did not. Kapur Decl., ¶ 10.

Kapur explained why he selected the Hauser image and why he decided to modify the color of Mr. Palmer's shirt and lighten the color of his collar. Kapur explained that his job is not to select an image that he would like to hang on his wall as a keepsake. Kapur's job is to select images that communicate complex concepts to consumers and do so in a way that engages them, draws them into GSK's message, and opens them up to listen to what GSK is saying. Kapur thought that the APE image by itself, and particularly as he modified it, did a significantly better job at that than the image

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

of Mr. Palmer taken by Straus.  In his opinion, and Kapur was the person who made the ultimate decision as to which images of Mr. Palmer to use, Straus' image did not meet the definition of what Kapur wanted for GSK's products as well as the Hauser photo.  In his opinion, the Hauser image provided to GSK by APE was a lot closer to what he was looking for in terms of portraying Mr. Palmer to smokers.  As Kapur explains, Mr. Palmer has a wonderful relationship with people. To some people, to older people, 65-plus, he's a buddy.  To people in their '40s and '50s, he's a father figure.  To kids, he's a grandfather.  Kapur thought that Straus' image, which showed Mr. Palmer as he had been thirteen years before, and seven years earlier that the Hauser image, put Mr. Palmer in "no man's land" from that perspective.  Straus' image of Mr. Palmer was kind of a happy-go-lucky image.  It was Kapur's view that the Hauser image of Mr. Palmer that came from APE, which did not show a big grin, portrayed Mr. Palmer in confident yet still approachable manner.  To Kapur, the Hauser image portrayed Mr.Palmer as someone who can provide advice about the subject, and in fact he can because he smoked and he quit smoking.  In the photo provided by APE, Mr. Palmer is not squinting so you can see his eyes, which are important in terms of building trust, a desirable trait when using a spokesperson to encourage people to trust his advice to buy a particular product.  Kapur thought that Straus' image with Mr. Palmer wearing a rugby shirt spoke to a younger man again and that wasn't an appropriate image for Mr. Palmer.  In short, Kapur thought the 1995 Hauser image of Mr. Palmer was more appropriate for GSK's usage in 2001/2002 than the 1989 Straus image of Mr. Palmer.  Kapur Decl., ¶ 11.

Kapur also liked the fact the modified Hauser image better focused a reader's attention. Kapur wanted the consumer to read the headline, to see the products, and to see Mr. Palmer's face. He recognized that one of the things that occurs with the bright blue shirt on the image of Mr. Palmer as it came from APE, in addition to the variability of the color in the various reproductions of the image, was that it was very eye catching in terms of pulling your eye to his shirt.  That was not what

Kapur desired.  But when Kapur used the modified Hauser image, Mr. Palmer's golf shirt is a more subdued color, a color that doesn't demand as much attention.  The modified Hauser image allows people's eyes to see the head lines, to see Mr. Palmer's face, which is very much set out by the white color and the white background and the dark shirt beneath it, and it also allows the color of the packages to grab their eye as opposed to fighting with a bright blue shirt.  Kapur Decl., ¶ 12.

Straus contends that when GSK made these minor modifications to the Hauser photograph in 2001, GSK converted a non-infringing work into an infringing work, namely, a "derivative work" of Straus' 1989 photograph of Mr. Palmer.  His testimony with respect to his claim that the two images are substantially similar contains some interesting admissions.  Straus said that the similarities are "pose, lighting and clothes."  Straus Depo., p. 163, line 22.  As to pose, it is important to recognize that Mr. Palmer's pose in the modified Hauser image is exactly the same as Mr. Palmer's pose in the original Hauser image, which Straus admitted is not a derivative work.  In fact, Mr. Palmer's pose is a *scenes a faire*.  Straus testified at page 163, line 23:

> Q.   All right.  So when you say "pose," what do you mean?
>
> A.   The pose, the way it's -- the pose in the photograph.
>
> Q.   Can you be more specific?
>
> A.   The way -- the way Mr. Palmer is sitting, which is similar to -- to my image.
>
> Q.   **Do you think that you have the exclusive right to have him sit in that fashion to be photographed?**
>
> A.   **No.**

As to lighting, as Straus admitted, his 1989 image of Mr. Palmer was taken outdoors and, even though he didn't know that the image he claims is a "derivative" work was shot by Hauser and provided by APE, he recognized it was shot indoors using supplemental artificial lighting.  Straus Depo., p. 174, line 14.  So, he claims only that the similarity in lighting is that the left side of

Mr. Palmer's face is lighter than the right side, which is shaded.  Straus Depo., p. 164, line 25.

However, as Jim Pickerall explains, the fact that Hauser independently side-lighted Mr. Palmer's

face is a distinction that strengthens the Hauser photo.  Pickerell Decl., ¶ 12.

As to clothes, because clearly Mr. Palmer is wearing a rugby shirt in the 1989 Straus photo

and a golf shirt in the Hauser 1995 photo, Straus claims only that the similarity in clothes is that in

each image Mr. Palmer is wearing a dark shirt with a white color and a white placket.  Straus Depo,

p. 165, line 15.  As both Jim Pickerell and Jeff Sedlik explain, Mr. Palmer's wardrobe is not a

protected expression.  Pickerell Decl., ¶ 15; Sedlik Decl., ¶ 12.

### c.    Other portrait photographs of Mr. Palmer that GSK used:

In the Fall of 2001, DVC also recommended that GSK have new imagery of Mr. Palmer

created – new imagery that would be even more current than the Hauser image.  DVC provided GSK

with several cost estimates from different photographers so that GSK could see what it could get for

its money.  It was clear that other professional photographers were willing to create new, current

imagery of Mr. Palmer and grant GSK far broader rights for less money than the amounts under

negotiation with Straus for his thirteen year old photo of Mr. Palmer.  Kapur Decl., ¶ 13; White

Decl., ¶ 7.

Kapur decided first to retain the services of a professional photographer named Gary Kufner

("Kufner")  to create new images of Mr. Palmer.  Then Kapur decided to retain the services of a

professional photographer named Allan Hunter Shoemake ("Shoemake") to create still additional

new images of Mr. Palmer.  Kapur personally attended both photo shoots.  By creating new images

of Mr. Palmer, GSK was able to obtain current photos that provided it with specifically what Kapur

wanted from a currency, mood and communications standpoint for GSK's ads.  Kapur Decl., ¶ 14;

White Decl., ¶ 8.

As mentioned, Kapur personally attended the Kufner and Shoemake photo sessions.  No one

instructed either of these professionals as to how to take their photographs. Each is an immensely talented photographer who likely would refuse to work for GSK if they tried to tell them how to do their work. No one showed them any prior photographs. Certainly no one showed either of them Straus' 1989 image of Mr. Palmer or even mentioned Straus' name. Kapur Decl., ¶ 15; White Decl., ¶ 9.

Kapur personally observed that Mr. Palmer is extremely careful about how he appears in his photos. He carefully selects the golf clothes that he is to be photographed in, and he essentially has a limited set of poses that he likes to be photographed in. In virtually every pose, his shoulders are hunched and he is leaning forward slightly in a confident, open position. His smile rarely shows a lot of teeth. The photographs attached hereto as Exhibits E and F were taken by Kufner and were used by GSK in its smoking-cessation campaign. The photographs attached hereto as Exhibits G, H, I, J and K were taken by Shoemake and were also used by GSK in its smoking-cessation campaign. Kapur Decl., ¶ 16.

Straus admitted that these photographs by Kufner and Shoemake are not substantially similiar to his 1989 photo. Again, some of Straus' reasoning as to why the images are not "substantially similar" to his image are enlightening. Referring to the testimony of Straus commencing at page 178, line 5:

> Q.  Look, if you would, please, sir, at what the reporter has marked as Straus Exhibit No. 60. [This is an image of Mr. Palmer shot by Gary Kufner attachd hereto as Exhibit E.]
>
>            * * * * *
>
> Q.  Do you consider this to be a derivative work of your image?
>
> A.  No.
>
> Q.  Why not?
>
> A.  Because it's not substantially similar to my image.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

Q.      And in what ways?

A.      Clothing, pose.  I can't tell about the lighting because it's a bad copy.

Q.      **He's got his shoulders hunched.**

A.      **So.**

Q.      **Isn't that part of the pose?**

A.      **Depends on how hunched hunched is.**

And continuing at page 179, line 14:

Q.      Let me show you what the reporter has marked as Straus Exhibit 61.  [This is an image of Mr. Palmer shot by Allan Hunter Shoemake and attached hereto as Exhibit G.]

                                    * * * * *

Q.      Do you consider this to be a derivative work of your image?

                                    * * * * *

A.      **I -- I don't consider it, as what I'm looking at right here, to be derivative, but it's a lot closer to being similar than the last exhibit you gave me.**

Q.      **In what ways?**

A.      **In the tilt of his head, the smile, the -- the way his hair looks.**

Q.      Hunched shoulders?

A.      Not terribly.  A little bit.

Commencing at page 181, line 1:

Q.      Look, if you would, please, sir, at what I've marked as Straus Exhibit 62.  [This is another image of Mr. Palmer shot by Allan Hunter Shoemake and attached hereto as Exhibit H.]

                                    * * * * *

Q.      Do you consider this image to be a derivative work, of your image?

A.      No.

Q.      Why not?

A.      Pose, clothes.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

Q.      What about the smile?

A.      **Better smile.  Closer -- closer -- closer to the smile, but his head is not tilted.**

Q.      **And the hunch, the hunched shoulders?**

A.      **He's not really hunched.  That's just the way he is.**

Q.      **That's just his natural --**

A.      **Natural.  It happens to all of us at some point.**

Q.      Did you get him hunched on purpose?

A.      **No.  But I didn't -- I didn't -- once he sat, I adjusted him to sit the way that was comfortable and more pleasing for me.**

And continuing at page 84, line 5:

Q.      Now, when you photographed Mr. Palmer in Jamaica, the one that you -- the image that you created and have registered, was -- was there a purpose that you were trying to achieve in that portrait?

A.      Well, to make a magazine cover.

Q.      I mean, were you trying to capture a particular expression that he had on his face?

A.      I was.

Q.      Did you tell him, "I want" --

A.      Yes.

Q.      **Did you tell him you wanted him to smile,** for example?

A.      **Correct.**

Q.      What -- what else did you tell him?

A.      Well, **I placed him where I wanted, where it had a pleasing background and asked him to -- you know, I asked him to pose in a way that was comfortable** and -- and where the lighting was good and appropriate.  And, you know, **I approved of what he was wearing** and basically designed the kind of picture that I wanted.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

Q.      **What did you want him to be wearing?**

A.      **Something that was pleasing** as opposed to, say, something that had little dots all over it or, you know, some sort of -- something that was too busy.

Q.      So, you wanted it to be subtle, I suppose.

A.      Not necessarily subtle.

Q.      The same color?

A.      Not necessarily subtle, **but just not too busy.**

And continuing at page 86, line 9:

Q.      And then of the various images that you took of Mr. Palmer, who is it that selected the one that has become the subject of the registration?

A.      Me.

                                        * * * * *

A.      Because that one was pleasing.  It was -- I think it's probably the -- the better of many of the ones.  There are lots of good ones, but that was the one that I chose.

Q.      **That's one in which he's smiling.**

A.      That's correct.

Q.      **Did you like that?**

A.      **I did.**

3.      **Summary judgment is appropriate as to the issue addressed by this Motion for Partial Summary Judgment No. 1:**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Indeed, Fed. R. Civ. P. 56(c) *requires* the granting of a summary judgment motion when "there is no genuine issue as to any material fact and the moving party is

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

entitled to a judgment as a matter of law." The mere existence of some alleged factual dispute fails to preclude the entry of a summary judgment; "the requirement is that there be no *genuine* issue of *material* facts." *Anderson*, 477 U.S. at 248 (emphasis in original); *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

The Supreme Court has held that a *Motion for Summary Judgment* filed by the Defendant is properly granted *unless* there is evidence presented to the Court "on which the jury could reasonably find for the plaintiff. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the Plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252. The Plaintiff Straus in this case has the burden of proof to establish every element of his alleged cause of action against the Defendants for copyright infringement based upon GSK's use of the Marc Hauser photograph in connection with GSK's quit-smoking campaign for its products Nicorette and Nicoderm. Thus, Straus has the burden to present evidence to raise a genuine issue of material fact in order to avoid summary judgment on this issue.

These rules apply to a claim of copyright infringement just as they do to any other claims. *See, e.g., Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (in the context of a copyright infringement claim, where a side-by-side comparison can be conducted and it is clear that no reasonable jury could find the two works *substantially similar*, summary judgment is appropriate); *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 114 (5th Cir. 1978) (upholding summary judgment granted by the District Court in favor of the defendant in a copyright infringement action with respect to the issue of alleged copying). *See also Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.), *cert. denied*, 513 U.S. 1062, 115 S.Ct. 675 (1994); *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 240 (2d Cir. 1983).

In support of its Motion, the Defendants submit the summary judgment evidence identified above on pages iii and iv. As shown by such summary judgment evidence, the Defendants are

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

entitled to summary judgment because:

[a]     First, the summary judgment evidence conclusively establishes that the image of Mr. Palmer shot indoors in 1995 by Hauser did not and does not infringe Straus' copyright in his earlier 1989 outdoor photograph of Mr. Palmer.  No reasonable jury could conclude otherwise.

[b]     Second, the minor modifications that GSK made in 2001 to the 1995 Hauser photograph did not convert that non-infringing work into an infringing work.  In other words, the minor modifications made by GSK to the 1995 Hauser photograph did not convert that work into a "derivative work" of Straus' copyrighted photograph.  No reasonable jury could conclude otherwise.

**4.     Applicable law, applied to the facts of this dispute:**

Under United States copyright law, the term "derivative work" is used in two different contexts.  First of all, the term is used with respect to a pre-existing work which someone has, with permission of the owner of copyright in the pre-existing work, recast, transformed, adapted or modified, or to which it has added new material.  In that context, the analysis is whether the entity modifying the underlying work has added new original expressions to the work.  If so, the entity modifying the underlying work becomes the owner of a separate copyright in the "derivative work" to the extent he added original expressions to the pre-existing work.  17 U.S.C. § 103(b).

The second context in which the term "derivative work" is used is in connection with an action for copyright infringement.  The Copyright Act vests in the copyright owner the exclusive right to prepare "derivative works" based on the copyrighted work.  17 U.S.C. § 103(a).  Straus speaks in terms of the 1995 Hauser photograph as modified in 2001 by GSK being a "derivative work" of Straus' 1989 photograph.  See Paragraph 12 of Straus' Complaint.[2]  Straus argues that the

---

[2]     Straus clarified during his deposition that the image – and the only image – he is referring to is the modified 1995 Hauser image.  The Complaint speaks in terms of such image being

Hauser 1995 photograph of Arnold Palmer as modified in 2001 by GSK infringes Straus' copyright in his 1989 photograph of Arnold Palmer.

To prove copyright infringement, Straus must establish (1) ownership of a valid copyright in the elements of his (Straus) 1989 photograph of Arnold Palmer which are the subject matter of copyright, *i.e.*, the *protected elements*, and (2) the copying of these *protected elements* of the work by the Defendants. *See, e.g., Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 348-349 (1991); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 532 (5th Cir. 1994).

The Defendants submit herewith the Declaration of Hauser, who conclusively establishes that he did not copy Straus' 1989 photograph of Mr. Palmer when he (Hauser) created his (Hauser) 1995 photograph of Arnold Palmer. Straus cannot and will not refute this summary judgment evidence.

If Straus cannot provide direct evidence of copying by Hauser, Straus is allowed by the law to demonstrate copyright infringement inferentially by providing that (1) Hauser had access to Straus' 1989 photograph of Mr. Palmer, and (2) that there is *substantial similarity* between the *protected elements* of Straus' 1989 photograph of Arnold Palmer and those same elements in the 1995 Hauser work. *Id.* at 532-33.[3]

The Declaration of Hauser conclusively establishes that he did not even have *access* to Straus' 1989 photograph of Arnold Palmer when he created his (Hauser) 1995 photograph of Arnold Palmer. Straus cannot and will not refute this summary judgment evidence.

However, because of the importance of the doctrine of *substantial similarity* to Straus'

---

a "reproduction or derivative work" of the 1989 Straus image. Obviously, the modified 1995 Hauser image is not a reproduction of Straus' photo, so Straus is left with his claim that it is a derivative work.

[3]  There is quite a bit of case law discussing when the plaintiff Straus is required to meet an even higher burden of proof, namely, "*striking similarity*." This higher standard is required when the plaintiff is simply speculating about the issue of *access*. If Straus speculates about access, he will face this higher burden of proof.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

secondary claim, *i.e.*, Straus' claim that the minor modifications made in 2001 to the Hauser photo converted it into an infringing work, the issue of *substantial similarity* will be discussed.

The mere fact that the Copyright Office issued a certificate of registration for a work does not mean that all aspects of those materials are automatically protected by the copyright laws. Some of the elements of a complainant's allegedly copyrighted work which are not protected are as follows:

- The copyright law protects only tangible, original *expressions* of ideas, not the *ideas* themselves. 17 U.S.C. § 102(b). "No author may copyright facts or ideas. The copyright is limited to those aspects of the work termed 'expression' -- that display the stamp of the author's *originality*." *Kepner-Tregoe* at 533 [citing *Harper & Row, Publishers, Inc. v. Nation Enters*, 471 U.S. 539 (1985)].

- Moreover, *scenes a faire*, that is, expressions that are standard, stock, or common to a particular subject matter, are not protected. The *scenes a faire* exclusion includes standard formats, themes, styles and settings. *See, e.g., Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1463 (5th Cir. 1990).

- Additionally, when an *idea* can be expressed in very few ways, copyright law does not protect that expression, because doing so would confer a *de facto* monopoly over the idea. In such cases idea and expression are said to be *merged*. *See, e.g., Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992).

So, in determining *substantial similarity*, courts must as a matter of law compare only the protectible copyrightable aspects of the two works. The fact that unprotected matters in the two works are similar, or even identical as in *Feist*, is immaterial and must be excluded from the analysis. *See Kepner-Tregoe*, 12 F.3d at 533-34. Unprotected matters include ideas, *scenes a faire*, and expressions that are merged into ideas, even if copied from the plaintiff's work, and *expressions*

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

taken from other sources or from the public domain, even if identical to something in the plaintiff's work. *See* NIMMER § 13.03[B][2]. To determine the scope of copyright protection, a court must filter out ideas, processes, facts, idea/expression mergers, and other unprotectible elements of a plaintiff's copyrighted materials to ascertain whether the defendant infringed protectible elements of those materials. *Kepner-Tregoe*, 12 F.3d at 533-34.

Let's review the aspects of the two photographs that must be excluded from the *substantial similarity* analysis:

1.    In making the comparison between Straus' 1989 photograph of Arnold Palmer and Hauser's 1995 photograph of Arnold Palmer, the Court must exclude the unprotected *idea* of taking a portrait photograph of Arnold Palmer. Sedlik Decl., ¶ 5; Pickerell Decl., ¶ 4; White Decl., ¶ 3; Kapur Decl., ¶ 4. Straus admitted that DVC had the right to obtain other photos of Mr. Palmer from other photographers, Straus Depo., p. 132, line 20, and that APE had the right to provide images of Mr. Palmer to DVC and GSK. Straus Depo. p. 136, line 14.

2.    The Court must also exclude the *scenes a faire*, that is, expressions that are standard, stock, or common to a particular subject matter, namely, the creation of a portrait photograph of Arnold Palmer. This includes expressions that constitute formats, themes, styles and settings that are standard to this subject matter, namely, the creation of a portrait photograph of Arnold Palmer. Both the Hauser photograph and the Straus photograph show Arnold Palmer in a comfortable, seated pose, looking at the camera with a positive, confident attitude. This is an *idea* or *scenes a faire*, that must be excluded from the analysis. Depo. Straus, p. 164, line 5; Sedlik Decl., ¶ 5-10; Kapur Decl., ¶ 16.

3.    Moreover, as is shown herein, Arnold Palmer basically has two different poses that

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

he uses for portrait photographs: one is a smiling expression showing teeth.  The other is a confident, positive look with his mouth closed.   No one has the right to appropriate either of these *scenes a faire*.  Sedlik Decl., ¶ 7; Kapur Decl., ¶ 16.

4.      Additionally, Arnold Palmer is a famous golfer.  He is almost always photographed wearing golf clothes.  Unless there is something extraordinarily unique about the golf clothes that he is wearing, the golf clothes that he is wearing must be excluded from the analysis as golf clothes constitute a standard format, theme, style or setting for portrait photographs of Arnold Palmer.  No one has the right to appropriate this *scenes a faire*.  Straus does not have the exclusive right to photograph Mr. Palmer in a dark shirt and a light collar to separate the dark shirt from his face.  Sedlik Decl., ¶ 12; White Decl., ¶ 11; Kapur Decl., ¶ 16.

5.      Arnold Palmer is an older man who generally assumes a hunched position when seated.  The fact that he assumes a hunched position when posing for a portrait photograph must be excluded from the analysis as it constitutes a *scenes a faire* for portrait photographs of Arnold Palmer.  Depo. Straus, p. 181, line 21; Sedlik Decl., ¶ 8; White Decl., ¶ 11; Kapur Decl., ¶ 16.

What does this leave in the two photos that is protectible?  Very little.  However, to the extent that Straus' counsel or Ms. Kinne may contend that there is *substantial similarity* between the *protected elements* of Straus' 1989 portrait photograph of Arnold Palmer and those same elements in Hauser's 1995 portrait photograph of Arnold Palmer, the Defendants conclusively show the Court the following significant distinctions in the two photographs:

1.      Straus' photograph was taken of Arnold Palmer in 1989.  Straus Depo., p. 39, line 14.  Hauser's photograph was taken six years later in July of 1995, when Arnold Palmer was an older man. Hauser Decl., ¶ 4. The age difference in Mr. Palmer alone

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

makes these photographs dissimilar, as Mr. Palmer appears to have aged noticeably in those six years. White Decl., ¶ 13; Kapur Decl., ¶ 11.

2. Straus' 1989 photograph of Arnold Palmer was taken outdoors. Hauser's 1995 photograph was taken indoors. Straus Depo., p. 85, line 8; Hauser Decl., ¶ 4; Sedlik Decl., ¶ 6; Pickerell Decl., ¶ 9; White Decl., ¶ 12. As a result, the Straus photograph shows a little wind-blown effect with a tuft of hair flying, while in the Hauser photograph the hair is more carefully combed. Pickerell Decl., ¶ 9; White Decl., ¶ 12; Kapur Decl., ¶ 11.

3. While Straus used outside lighting, Hauser used the natural light in the room supplemented by artificial flash lighting from professional portable flash generators and color gels over the lights to add a warmth to Mr. Palmer's portrait, capturing a very warm and personable image of Mr. Palmer. Straus Depo., p. 85, line 8; Hauser Decl., ¶ 4; Sedlik Decl., ¶ 6; Pickerell Decl., ¶ 9; White Decl., ¶ 12.

4. Mr. Palmer has two different poses that he favors for portrait photographs: one is a smiling expression showing teeth and the other is a confident, positive look with his mouth closed, and even though no one has the right to appropriate either of these *scenes a faire*, a major, significant difference in the two photographs is Arnold Palmer's smile. The Straus photograph shows Arnold Palmer's teeth and the Hauser photograph does not. This is immediately noticeable and distinguishes the photographs strikingly. Sedlik Decl., ¶ 7; White Decl., ¶ 14; Kapur Decl., ¶ 16.

5. The positioning of Mr. Palmer's body and arms are strikingly different in the two photographs. In the Hauser photograph, Mr. Palmer is sitting on the edge of a desk with his arms apart – very open, positive body language. In the Hauser photo, Mr. Palmer looks confident yet still approachable, like somebody who can provide

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

you with advice about the subject at hand – smoking cessation – and, in fact, he can

because he smoked and he quit smoking.  In the Straus photograph, Mr. Palmer is

sitting with his legs crossed and his arms crossed – very closed body language.

White Decl., ¶ 15; Kapur Decl., ¶ 11.

6.    While the fact that Mr. Palmer's shoulders are somewhat hunched in both

photographs is not a copyrightable *expression*, as it is a common pose typical of

photographs of Arnold Palmer, Straus Depo., p. 181, line 21; Sedlik Decl., ¶ 8,  the

head relative to the shoulders is straighter (square to the shoulders) in the Straus

photograph than in the Hauser photograph, which has more tilt to the head.  Pickerell

Decl., ¶ 11.

7.    Hauser's photograph was taken from a higher angle, looking down on Mr. Palmer,

rather than at the angle that Straus' photograph was taken.  This results in a

significant difference in the way Mr. Palmer appears.  Pickerell Decl., ¶ 10; Kapur

Decl., ¶ 11.

8.    Mr. Palmer's eyes are much more open in Hauser's photograph than in Straus'

photograph.  (This is likely because Straus' photograph was taken outdoors and

exterior lighting makes the subject squint more.)   In the Hauser photograph,

Mr. Palmer is not squinting, so the viewer can see Mr. Palmer's eyes, which is

important in terms of trusting somebody enough to buy the product he endorses.

Pickerell Decl., ¶ 9; White Decl., ¶ 17; Kapur Decl., ¶ 11.

9.    In the 1995 Hauser photo, Hauser used a strong side light to the right which created

the shadows on the left side of Mr. Palmer's face.  Side light of this nature give a

greater feeling of strength.  In Straus' 1989 photo of Mr. Palmer, the lighting is very

flat with none of the shadow in Mr. Palmer's face.  Pickerell Decl., ¶ 12.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

10. Mr. Palmer's head is more upright in the Hauser photograph, presenting a stronger, more forceful image of Mr. Palmer than in the Straus photograph where Mr. Palmer is more happy-go-lucky.  Pickerell Decl., ¶ 11; Kapur Decl., ¶ 11.

11. In the Straus photograph, Mr. Palmer is wearing a rugby shirt.  In the Hauser photograph, Mr. Palmer is wearing a golf shirt.  With a rugby shirt on, the Straus photo is more dated.  Also, with a rugby shirt on, the Straus photo of Mr. Palmer appeals to a younger man, while with a golf shirt on, the Hauser photo of Mr. Palmer appeals to an older man.  White Decl., ¶ 18; Kapur Decl., ¶ 11.

In short, even giving Straus the benefit of the doubt that each of the attributes discussed above of the two photographs constitutes a copyrightable *expression*, clearly the copyrightable expressions in Hauser's 1995 portrait photograph of Arnold Palmer are entirely different from the copyrightable *expressions* of Straus' 1989 portrait photograph of Arnold Palmer.  Indeed, virtually every alleged copyrightable *expression* of the two photographs is remarkably different.

As such, the Defendants are entitled to summary judgment dismissing the contention by Straus' counsel – contrary to the testimony of Straus himself – that Hauser's 1995 photograph of Arnold Palmer is a "derivative work" of Straus' 1989 photograph of Arnold Palmer.  Stated otherwise, Hauser's 1995 photograph of Arnold Palmer does not infringe Straus' copyright in his 1989 photograph of Arnold Palmer.  No reasonable jury could conclude otherwise.

Now we turn to the Hauser 1995 non-infringing image of Arnold Palmer as it was modified by GSK years later in 2001.  As conclusively shown, GSK made only three changes to the Hauser 1995 photograph of Arnold Palmer:  In accordance with standard procedures for every photograph, GSK made certain color corrections to Mr. Palmer's skin tones; GSK darkened the color of Mr. Palmer's golf shirt; and GSK lightened the color of his golf shirt collar to provide color

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

separation between the dark golf shirt and Mr. Palmer's face.[4] As conclusively established by Kapur, these modifications were made for aesthetic reasons. Importantly, GSK did <u>not modify</u> a single one of the <u>eleven significant differences</u> identified and discussed above that exist between Hauser's 1995 photograph of Arnold Palmer and Straus' 1989 photograph of Arnold Palmer! Those eleven differences render the Hauser 1995 photo of Mr. Palmer non-infringing even if Hauser had previously had access to Straus' 1989 photo – which he (Hauser) did not have – or even if GSK's people were trying to copy Straus' image – which they were not. Sedlik Decl., ¶ 13. Pickerell Decl., ¶ 15. White Decl., ¶ 19.

Unless extraordinarily unique, the use of dark colored golf shirts and light colored golf shirt collars is not a copyrightable *expression*. Dark and light colors in clothes constitutes an *idea*, *scenes a faire*, or an expression of an *idea* that can be expressed in only a few ways. The law does not allow Straus to claim that all of the thousands of the various portrait photographs that have been taken of Arnold Palmer over the years infringe his (Straus) 1989 photo whenever Mr. Palmer is depicted in a dark golf shirt with a light collar. GSK's making of these relatively minor modifications to Hauser's 1995 photograph of Arnold Palmer – a work that the Defendants have conclusively established is not an infringing work – did not convert that non-infringing work into a work that infringed Straus' copyright in his 1989 photograph of Arnold Palmer. No reasonable jury could conclude otherwise. Sedlik Decl., ¶ 12-13. Pickerell Decl., ¶ 15. White Decl., ¶ 19. Kapur Decl., ¶ 17.

---

[4] In some of the advertising materials for its cease-smoking campaign, GSK also "flipped" or reversed the Hauser 1995 image of Mr. Palmer as needed to cause Mr. Palmer to be facing the subject matter of the advertisement. This is standard with respect to all photographs used in advertising materials; indeed, GSK and DVC did the same thing with Straus' photograph.

**5.     Prayer:**

The Defendants have conclusively established that [a] Hauser's 1995 photograph of Mr. Palmer did not infringe Straus' copyright in his 1989 photo of Mr. Palmer, and [b] the relatively minor modifications to Hauser's 1995 photograph that GSK made in 2001 for aesthetic reasons did not convert that non-infringing work into a work that infringed Straus' copyright. Accordingly, the Defendants respectively move the Court to enter judgment in their favor and against Straus dismissing with prejudice all claims based upon the Defendants' use of the Hauser 1995 photograph shown in Exhibit B hereto and/or the modified Hauser 1995 photograph shown in Exhibit D hereto.

Respectfully submitted,

April 17, 2006

J. Clark Martin
Attorney-in-Charge
State Bar No. 13090000
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
Phone:  713-758-2490
Facsimile:  713-615-5248

Of Counsel for GSK:
Pasquale A. Razzano
Tim Kelly
Tila M. Duhaime
FITZPATRICK, CELLA, HARPER
    & SCINTO
30 Rockefeller Plaza
New York, New York 10112
212-218-2100

ATTORNEYS FOR DEFENDANT

Of Counsel for DVC:
Christina M. Tchen
Amy Gardner
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
312-407-0700

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing *Defendants' Motion for Partial Summary Judgment with Respect to Straus' Claim that an Image of Arnold Palmer taken in 1995 by a Photographer named Marc Hauser, with certain Modifications made thereto years later in 2001 by GSK, is an alleged Derivative Work of Straus' 1989 Photograph*, was served by messenger on this 17th day of April, 2006, upon the Plaintiff through his attorneys of record, at the following address:

> Randy J. McClanahan, Esq.
> Robert H. Espey II, Esq.
> McClanahan & Clearman, LLP
> 4100 Bank of America Center
> 700 Louisiana
> Houston, Texas 77002
> Telephone 713-223-2005
> Telefax 713-223-0664

> J. Clark Martin

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1**